IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GINA PRONCHICK,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | Civil No. 16-8983(RMB)<br><br>**OPINION** |

**BUMB, UNITED STATES DISTRICT JUDGE:**

This matter comes before the Court upon an appeal by Plaintiff Gina Pronchick (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and social security supplemental income ("SSI") for the period from May 31, 2003 to December 31, 2006 (the "Relevant Period"). For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

## I. Disability Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states that:

> [A]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] he would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v). In Plummer v. Apfel, the Third Circuit described the Commissioner's inquiry at each step of this analysis, as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v.

Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant can perform other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this

>     fifth step. see Podedworny v. Harris, 745 F.2d
>     210, 218 (3d Cir. 1984).

Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

**II. Background**

This Court recites only the facts that are necessary to its determination on appeal, which is narrow.

    A. <u>Brief Medical History</u>

The Plaintiff was born on June 11, 1966 and was 36 years old on the alleged date of disability onset, May 1, 2003. (Administrative Record "R." at 65). The Plaintiff has past relevant work history as a typist and secretary. (R. at 40, 42, 43, 44, 45). At the time of the alleged onset, however, she was a stay at home mother. (R. at 45).

The Plaintiff lists in her Initial Disability Determination Explanation several ailments including joint pain, fevers, dizzy spells, rash, nausea, fatigue and Lupus. (R. at 65). She testified that that during the Relevant Period[1] she suffered from a combination of weakness in her hands, stiffness in her joints, fatigue, and nausea, which required her to lie down for long periods of time. (R. at 45). Also, during this time, the Plaintiff was pregnant twice. (R. at 169). During the Relevant

---

[1] The Plaintiff's earning record shows that she has acquired sufficient quarters of coverage to remain insured through December 31, 2006. This sets the Relevant Period to be assessed retrospectively by the ALJ from the alleged onset date of May 1, 2003 to December 31, 2006 (hereinafter "the date last insured").

3

Period, the Plaintiff had only three non-pregnancy related visits to her Primary Care Physician. (R. at 423). During this period, she found it difficult to stand for long periods of time. (Id.)

Two years after the Relevant Period, in 2008, the Plaintiff was diagnosed with "probable" Lupus on a serologic series, but "unconfirmed on clinical grounds." (R. at 355, 535). As of 2009, her Lupus was being treated with Plaquenil. (R. at 407). The Plaintiff's Lupus symptoms and treatments were ongoing as of the date of her hearing before the ALJ, January 9, 2015. (R. at 33).

B. Treating Physician's Opinions and Corresponding Records

The record contains three opinions from the Plaintiff's treating physicians. The first opinion was submitted by the Plaintiff's Primary Care Physician, Dr. Guarino. Dr. Guarino stated that he had been treating the Plaintiff for "joint pain, fatigue, severe migraines, muscle weakness, dizziness, dermatitis and pleurisy" since 2001. (R. at 423). The record shows only one visit to Dr. Gaurino, when the Plaintiff reported Vertigo and hearing loss during her pregnancy in 2001. (R. at 328). In his written opinion, Dr. Gaurino recounts the Plaintiff's office visits during the Relevant Period. (R. at 423). He states the Plaintiff visited him on January 30, 2004 and was treated for "headaches, neck pain and upper extremity

4

paresthesia with a NSAID." (Id.) Dr. Guarino did not see her again until January 16, 2006 when she complained of dizziness, then again in July of the same year when she reported vertigo. (Id.) The treatment records submitted by the Plaintiff do not reflect any of the office visits Dr. Guarino referred to in his opinion letter.

The second opinion was submitted by Dr. Waldron. He filled out a Medical Source Statement (MSS) on January 5, 2015. In the MSS, Dr. Waldron stated that he had contact with the Plaintiff for "4 years." (R. at 558). He described the Plaintiff's current diagnosis as "Systemic Lupus Erythematosus (SLE), fatigue, joint pains – hands, knee, neck, lower back, shoulders." (Id.) In response to the supplemental question: "[h]as the patient's condition existed and persisted with the restrictions as outlined in this [MSS] at least since April 1, 2001?" Dr. Waldron answered "No." (R. at 561). He went on to note, "[p]atient was diagnosed with SLE in 2008 however symptoms persisted since 2003." (Id.) The treatment records submitted by Dr. Waldron show office visits and lab reports between the years 2012 and 2013.

The final opinion submitted was by the Plaintiff's treating Rheumatologist, Dr. Carney. Dr. Carney filled out a Physician Review Form on February 13, 2015. In it he marked an "X" indicating that he "substantially" agreed with the opinion

5

provided "by Dr. Waldron in the MSS dated January 5, 2015." Dr. Carney also submitted close to 190 pages of treatment records detailing the Plaintiff's care from 2008 to 2015. However, these records reflect a time well after the period that was assessed by the ALJ.

    C. Procedural Background

The Plaintiff applied for DIB and SSI on August 17, 2012 alleging that she was disabled due to joint pain, fevers, dizzy spells, lupus, rash, nausea, fatigue and indicating an onset date of April 1, 2001. (R. 65). The claim was denied initially on December 7, 2012 (R. 71) and upon reconsideration on June 11, 2013. (R. 81). Thereafter, the Plaintiff filed a written request for a hearing on July 30, 2013. (R.100-01). The Plaintiff appeared and testified at a hearing held on January 9, 2015, in Pennsauken, N.J. in front of the Honorable Nicholas Cerullli, ALJ. (R. 134). William T. Slaven, III, an impartial vocational expert, also testified at the hearing. (R. 19). During the hearing, the Plaintiff changed her alleged onset date to May 1, 2003. (R. 19, 117). On May 21, 2015 the ALJ issued his decision finding that the Plaintiff was not disabled. (R.19-26). The Appeals Council denied the Plaintiff's request for a review on September 29, 2016, at which time the ALJ's decision became the final determination of the Commissioner. (Id. at 1-5).

    D. The ALJ's Opinion

The ALJ applied the required five-step analysis under the Social Security Act. (20 CFR 404.1520(a)). He ultimately determined the Plaintiff was not "disabled." At Step 1, the ALJ found that the Plaintiff did not engage in "substantial gainful activity" during the Relevant Period. (R. at 21). At Step 2, the ALJ found that the Plaintiff had the following three severe impairments: osteoarthritis, arthralgia, and systemic lupus erythematosus. The ALJ also considered the Plaintiff's testimony regarding anxiety and depression during the Relevant Period, but found that the Plaintiff had not been treated for these specific ailments before the date last insured. Moreover, the ALJ reviewed the non-contemporaneous records presented by the Plaintiff, and noted,

> after the date last insured that the claimant's depression and anxiety are well controlled with medication. This suggests that even if the claimant had a medically determinable mental impairment during the relevant period at issue, it was not a severe impairment since it was controlled and did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities.

(R. at 22).

Next, at the third step, the ALJ found that through the Relevant Period, the Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (R. at 22). The ALJ noted,

7

> Specifically, the claimant neither
> established that she is unable to ambulate
> effectively, nor established that she is
> unable to perform fine and gross movements
> effectively. She self-reports having trouble
> using buttons but otherwise having an active
> day, which involves preparing food, doing
> laundry and being able to ambulate with a
> splint. The evidence of record does not
> establish symptoms sufficient to meet listing
> 1.02.

(R. at 22).

Based on these findings and multiple references to the non-contemporaneous medical records, the ALJ calculated the Plaintiff's RFC to perform "sedentary work" as defined in 20 CFR 404.1567 (a),

> except occasional climbing, balancing,
> stooping, kneeling, crouching and crawling;
> frequent reaching, handling, fingering and
> feeling; avoid concentrated exposure to
> extreme heat and cold, wetness and humidity,
> loud noise, and hazards such as unprotected
> heights and moving machinery; unskilled work
> involving routine and repetitive tasks with
> occasional changes in the work setting.

(R. at 22).

In making this determination, the ALJ considered the Plaintiff's testimony, the vocational expert's opinion, the reports of doctors Guarino and Waldron, and an extensive medical history, the majority of which is outside the Relevant Period. The ALJ found the Plaintiff's statements regarding her aliments during the Relevant Period to be "not entirely credible," as they lacked support in the record. The ALJ pointed out that the

Plaintiff's Lupus history detailed treatment and limitations "well after" the Relevant Period from May 1, 2003 to December 31, 2006. (R. at 23). Even after that period, the ALJ stated that the record shows that the Plaintiff's symptoms are "well controlled" by medication and that the Plaintiff did not have any "classical appearance" of side effects. (Id.)

As for the medical opinion evidence, the ALJ discussed only two of the three reports from the Plaintiff's treating physicians. He assigned "little weight" to Dr. Guarino's opinion, stating that the opinion was not supported by the "objective findings" in the record. (R. at 23). The ALJ noted that the report only reflected that the Plaintiff had "intermitted treatment with Dr. Guarino which occurred about once every two years" during the Relevant Period. (Id. at 24).[2] Additionally, The ALJ afforded Dr. Waldron's Medical Source Statement "little weight" because Dr. Waldron's treatment of the Plaintiff began well after the date last insured. (R. at 24). There is no mention of the opinion of Dr. Carney, the Plaintiff's treating Rheumatologist.

After performing the RFC assessment, the ALJ determined that the Plaintiff, as of the date last insured, was unable to

---

[2] These visits are only discussed briefly in Dr. Guarino's report. (R. at 423). There are no office visits with Dr. Guarino during the Relevant Period reflected in the treatment record.

9

perform any past relevant work (Id.) Moreover, the ALJ concluded that the Plaintiff was a "younger individual" as of the alleged disability onset date, had at least a high school education, and was able to communicate in English. (Id.). The ALJ further determined that transferability of job skills was immaterial to his determination under the medical—vocational rules. (Id.)

According to the vocational expert, the Plaintiff had past relevant work as an administrative clerk and as a clerical-typist, both of which were semiskilled work that involved sedentary to light exertion. (Id. at 24). Further, the vocational expert confirmed that the Plaintiff's past relevant work exceeded the RFC. (Id.) The vocational expert testified that an individual working within the range of "sedentary work" and having the Plaintiff's additional limitations would be able to work as a Final Assembler-Optical Goods (DOT#713.687-018), Addressing Clerk (DOT#209.587-010), and Telephone Information Clerk (DOT#237.63706). (Id. at 25). Then, considering the Plaintiff's age, education, work experience, and RFC as determined, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. (Id. at 24) Thus, the Plaintiff's application was denied.

**III. Standard of Review**

When reviewing the Commissioner's denial of disability benefits, the Court's role is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by "substantial evidence." Terwilliger v. Chater, 945 F. Supp. 836, 840 (E.D. Pa. 1996) (citing Jesurum v. Secretary of the United States Dep't of Health & Human Servs., 48 F.3d 114, 116 (3d Cir. 1995)); see 42 U.S.C. § 405(g), 1383 (c)(3). Regarding legal issues, the Court's review is plenary. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Moreover, substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Fargnoli v. Halter, 247 F.3d 34, 38 (3d Cir. 2001) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)); see also Dellapolla v. Comm'r, 662 Fed. Appx. 158, 160 (3d Cir. 2016) (describing such evidence as what "a reasonable mind might accept as adequate to support a conclusion.").

Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r of Soc. Sec., 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). However, if faced with conflicting evidence,

11

the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections." Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000); see also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

12

**IV. Analysis**

The Plaintiff presents four issues for review by this court. First, the Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of Dr. Guarino, the Plaintiff's treating cardiologist, and Dr. Waldron, the Plaintiff's primary care provider. Specifically, the Plaintiff claims that the ALJ failed to properly consider SSR 83-20 regarding "non-contemporaneous evidence." (Pl.'s Br. 14). Second, the Plaintiff claims the ALJ failed to consider the opinion provided by Dr. Alexander Carney, the Plaintiff's treating Rheumatologist. Specifically, the Plaintiff contends "it was improper for the ALJ to ignore the existence of this opinion or to [not] weigh it in his decision." (Id. at 17). Third, the Plaintiff contends the ALJ erred in his determination of the Plaintiff's credibility. Finally, the Plaintiff contends that the ALJ erred in his determination of the Plaintiff's RFC.

Because it appears that the ALJ failed to consider Dr. Carney's opinion, the Court cannot determine whether the Commissioner's decision is supported by substantial evidence. As such, the Court will remand for further proceedings. Fargnoli, 247 F.3d at 42 (holding "to the extent that the ALJ reaches a finding contradictory to that of [the Plaintiff's] treating physicians, he must explain the reasoning behind such a

finding"). Because remand is warranted on this issue, the court need not reach the Plaintiff's additional arguments.

In order to clarify the ALJ's responsibilities on remand, however, the Court will briefly address the Plaintiff claims that the ALJ failed to properly consider SSR 83-20 in regard to "non-contemporaneous evidence."

### A. ALJ's Failure to Consider Dr. Alexander A. Carney's Opinion

On February 13, 2015, Dr. Alexander A. Carney, the Plaintiff's treating Rheumatologist since 2008, filled out a Physician Review Form substantially agreeing with Dr. Waldron's Medical Source Statement that the Plaintiff's symptoms of Lupus had persisted since 2003. As mentioned above, also included in the record are approximately 190 pages of Dr. Carney's treatment records of the Plaintiff, spanning the years 2008 to 2015. In his final determination, the ALJ made no reference to Dr. Carney's opinion. The Defendant argues that Dr. Carney's form is "duplicative of evidence appropriately considered" and "reasonably discounted" by the ALJ. (Def.'s Br. at 19). The Court disagrees.

The ALJ must analyze all the evidence and provide adequate explanations when disregarding portions of it. Snee v. Secretary of Health & Human Services, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981);

Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)). Further, an ALJ may not "reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Terwilliger v. Chater, 945 F. Supp. 836, 842 (E.D. Pa. 1996) (quoting Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (internal quotation marks, citations and indication of alteration omitted).

    The Defendant cites Rutherford v. Barnhart to support the proposition that a remand is not required here because it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005). Barnhart is, however, distinguishable from this case. In Barnhart, the Commissioner had seemingly disregarded parts of the record that did not support the medical issue central to the claim. (Id. at 552)(stating that ALJ had not committed reversible error in failing to specifically address claimant's obesity where claimant had not raised obesity as an impairment or limitation before the ALJ and had not identified how obesity affected the five-step analysis). Here, Dr. Carney's opinion addresses an impairment central to the Plaintiff's pertinent claim, her Lupus diagnosis, and therefore is relevant to the final determination. Thus, the lack of detail—or any mention—on this point in the

15

ALJ's decision affects this Court's ability to carry out its "duty . . . to determine whether the conclusions [the ALJ] reached are rational." Terwilliger, 945 F. Supp. at 843 (quoting Cotter, 642 F.2d at 705).

It is entirely possible that the ALJ properly disregarded Dr. Carney's opinion, and that on remand this will be clarified. However, because he did not address his reasoning for disregarding Dr. Carney's opinion, this Court cannot determine whether the ALJ's decision on this issue was based on substantial evidence.

    B. ALJ's Consideration of Non-Contemporaneous Evidence

The Plaintiff argues that the ALJ "fail[ed] to consider SSR 83-20" when evaluating the treating physicians' retrospective opinions. Specifically, the Plaintiff admits the record is lacking in contemporaneous evidence which results in a "triggering" of SSR 83-20,

> With slowly progressive impairments . . . determining the proper onset date is particularly difficult, when . . . the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and the symptomatology of the disease process.

SSR 83-20 (1983).

The Plaintiff contends it was an error for the ALJ to give little weight to the retrospective opinions of Dr. Guarino and Dr. Waldron while "failing to cite specific contradictory evidence" in the non-contemporaneous record. The Court finds no such failure.

Throughout the ALJ's opinion, there are multiple specific references to the Plaintiff's extensive non-contemporaneous medical treatment records from after her date last insured. When determining severity, the ALJ considered the Plaintiff's treatment in 2012 at which her Lupus was classified as "well controlled" by medication.[3] When determining the Plaintiff's RFC, the ALJ summarized the Plaintiff's Lupus history from 2008 to 2012 and her positive response to Plaquenil. (R. at 23). Included in this summary is consideration of the Plaintiff's cardiac records from 2006, her intermittent treatment with Dr. Guarino during the Relevant Period, and her 2008 visit with Dr. Carney where he reported that the Plaintiff made a "100% fist with good grip strength." (R. at 24, 355). Further, in assessing the Plaintiff's RFC, the ALJ noted consideration of Dr. Guarino's opinion that the Plaintiff had difficulty standing for long periods of time before her date last insured. (R. at

---

[3] Additionally, this was supported by the Plaintiff's self-reported function report filled out in 2012, describing the Plaintiff's daily activities in detail. (R. at 22, 169-177).

17

23). Finally, the ALJ acknowledged that during Relevant Period, the Plaintiff "did have intermittent symptoms." (R. at 24). Therefore, he determined the Plaintiff was unable to perform any past relevant work. (Id.)

As established by the Third Circuit and stated above, reviewed in its totality, "where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn, 165 F. App'x at 215. Here, it is evident that the ALJ took the non-contemporaneous record into consideration and specifically cited evidence that he found contradictory to the opinions of both Dr. Guarino and Dr. Waldron. Remand is not warranted on this ground.

## V. Conclusion

Because the Court cannot determine whether the ALJ considered Dr. Carney's opinion, the decision of the Commissioner will be vacated and the Court will remand for further proceedings. On remand, the ALJ may still determine that the Plaintiff is not disabled. In fact, he may still discredit the opinion of Dr. Carney. If so, however, he must explain his reason for doing so, and point to record evidence that counsels for little weight to be afforded to the opinion.

An Order consistent with this Opinion shall issue on this date.

s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE

DATED: February 26, 2018